ICHIRO SHIRAI, Appellant, *v.* JULIUS BLUM, Respondent.

*Sales — action by buyer for defendant's failure to deliver goods — buyer required by contract to establish letter of credit — expiration of letter of credit before any goods were shipped by defendant — when failure to extend letter of credit not fault of buyer — when such failure not a breach of the contract of sale.*

1. Plaintiff ordered from defendant certain goods to be thereafter shipped, payment secured by bankers' irrevocable letter of credit. Later the bank sent to defendant a letter of credit expiring on a specified date. The defendant accepted the order only upon a condition, to which the plaintiff agreed, that delivery of the goods ordered might be made at a later date and that if defendant should be unable to make delivery within the life of the letter the plaintiff would make arrangements for the extension of the credit. No shipments were ever made by defendant and the letter of credit was not extended upon its expiration. Thereafter, plaintiff wrote defendant that the letter of credit had been extended and requested shipment of the goods and the bank also notified defendant to the same effect. Defendant then wrote plaintiff that he regarded the contract as canceled and the matter closed by reason of the expiration of the credit. Plaintiff brought this action to recover damages for defendant's failure and refusal to ship the goods. Defendant contends that the plaintiff's failure to extend the letter of credit when it expired, coupled with a notice sent by the bank to the defendant asking a return of the letter of credit for cancellation after its expiration, constituted a breach of contract so material that it justified defendant regarding it as abandoned without notice to plaintiff. The contract cannot be so construed; the defendant did not stipulate for a letter of credit which would provide complete and continuing assurance of payment but was content to rely upon plaintiff's promise that he would have the letter of credit extended in the event that it was " impossible " for the defendant to deliver the goods within its life. Under the contract plaintiff was not required to make any arrangements to extend the letter of credit at its expiration unless he had received notice that its extension would be required. The notice by the bank that the letter of credit had expired was not given by the bank as the agent of plaintiff but was a matter of routine sent out for its own protection. The defendant has established no justification for its refusal to deliver the merchandise according to its contract.

2. The fact that the contract was made by plaintiff for the benefit of a disclosed principal does not preclude the plaintiff from bringing the action; the contract was made in the plaintiff's name and all the dealings of defendant were with the plaintiff, and, therefore, the plaintiff may properly bring the action for breach of contract in his own name.

*Shirai* v. *Blum,* 207 App. Div. 605, modified.

(Submitted October 9, 1924; decided November 25, 1924.)

APPEAL from a judgment entered. January 17, 1924, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Abraham P. Wilkes* and *Frank Walling* for appellant. Plaintiff was not required to make arrangements for an extension of the letter of credit until the defendant first gave him notice that it was impossible to ship the merchandise within the life of the letter of credit and requesting him to extend it. (Williston on Cont. § 894; *Vyse* v. *Wakefield,* 6 M. & W. 442; *Bliss* v. *U. S. Gas Light Co.,* 149 N. Y. 300.) Assuming that it was impossible for the defendant to ship the merchandise within the life of the letter of credit and that the contract itself did not require notice from the defendant to extend, plaintiff's failure to extend the letter on or before December 31, 1919, was not a breach of the contract in point of time of sufficient importance and materiality to justify defendant's refusal to perform after plaintiff subsequently tendered the extension. (Williston on Cont. § 869; *Helgar Corp.* v. *Warner's Features,* 222 N. Y. 449; *Fossume* v. *Requa,* 218 N. Y. 339; *Trainor Co.* v. *Amsinck & Co.,* 236 N. Y. 392; *Brede* v. *Rosendale Terrace Co.,* 216 N. Y. 246; *Mawhinney* v. *Milbrook Woolen Mills,* 234 N. Y. 244; *Strasbourger* v. *Leerburger,* 233 N. Y. 55; *Lord Const. Co.* v. *Edison P. C. Co.,* 234 N. Y. 584; *Heller & Brother* v. *Continental Mills,* 196 App. Div. 7; 233 N. Y. 641; *Partola Mfg. Co.* v. *General Chemical Co.,*

234 N. Y. 320; *Henderson T. & R. Co.* v. *Wilson & Co.*, 235 N. Y. 489.) The plaintiff has the right to prosecute the action in his own name. (Civ. Pr. Act, § 210; *Symmers* v. *Carroll,* 207 N. Y. 632; *Duncan* v. *China Mutual Ins. Co.,* 129 N. Y. 237; *Middleton* v. *Wohlgemuth,* 141 App. Div. 678; *Stanley* v. *Choppell,* 8 Cow. 235; *Portoghese* v. *Ill. Surety Co.,* 81 Misc. Rep. 211; *Parker* v. *Paine,* 37 Misc. Rep. 768; *Considerant* v. *Brisbane,* 22 N. Y. 389; *International Harvester Co.* v. *Champlin,* 155 App. Div. 847.)

*Walter M. Schwarz* for respondent. The plaintiff by failing to extend the letter of credit on December 31, 1919, failed in the performance of an essential term of the contract. (*Strasbourger* v. *Leerburger,* 233 N. Y. 55; *Lord Construction Co.* v. *Edison P. C. Co.,* 234 N. Y. 411; *Heller & Brother* v. *Continental Mills,* 196 App. Div. 7; 233 N. Y. 641; *Partola Mfg. Co.* v. *General Chemical Co.,* 234 N. Y. 320; Williston on Sales [1909 ed.], 980; *Anvil Mining Co.* v. *Humble,* 153 U. S. 540; *Henderson Tire & Rubber Co.* v. *Wilson & Co.,* 235 N. Y. 489; *De Vivo* v. *Gallerani,* 105 Misc. Rep. 606; *Rubber Trading Co.* v. *Manhattan Rubber Co.,* 221 N. Y. 120; *Trainor Co.* v. *Amsinck & Co.,* 236 N. Y. 392.) The plaintiff was merely the agent of Nakazawa & Co., Ltd., and as such not the proper plaintiff. (*Gray & Co.* v. *Cavalliotis,* 276 Fed. Rep. 565; *Schipper* v. *Milton,* 51 App. Div. 522; *Thompson* v. *Fargo,* 49 N. Y. 188; *Jones* v. *Gould,* 123 App. Div. 236.)

Lᴇʜᴍᴀɴ, J. On or about October 30th, 1919, the plaintiff sent to the defendant a signed order for 100 gross tons of " black sheets: U. S. gauge 28, 36 by 72." The order provided: " Shipment: Four to eight weeks. Terms: 1% Cash discount establishing Bankers irrevocable Letter of Credit. Payment: Against invoice with Railroad Bill of Lading." The defendant did not acknowledge or formally accept the order until November

1924.] Opinion, per LEHMAN, J. [239 N. Y. 172]

14th. On November 13th, the Bank of Taiwan, Limited, sent the defendant an irrevocable letter of credit which was numbered 357, and which authorized the defendant "to value upon the Bank of Taiwan, Ltd., New York, for account of Messrs. Nakazawa & Company for any sum or sums not exceedingly in all Eleven Thousand Five Hundred seventy-five Dollars eighty-eight cents, accompanied by all negotiable Railroad Bills of Lading marked ' For Export ' together with invoices covering shipment from New York * * * if presented on or before December 31st, 1919." On November 14th, the day after the letter of credit was sent to the defendant, the defendant wrote the plaintiff that it accepted the order subject to certain conditions, stating: " We will endeavor to make shipment of this material in about eight weeks from date, sooner or later, subject to any unavoidable delays which may be incurred due to shortage of cars, labor conditions, strike situations, or otherwise."

" In the event that it is imposs b'e for us to make delivery within the life of the letter of credit, it is understood and agreed that you will make arrangements for extension of this credit through your bankers in New York."

On the same day the plaintiff wrote the defendant, acknowledging receipt of its letter and stating that " we note that you will endeavor to ship in about eight weeks from date or sooner. We trust you will use every possible effort to have this shipment go forward at the earliest possible date, and we will appreciate prompt shipment."

No shipments were ever made by the defendant, and the letter of credit was not extended upon its expiration. On January 26th the plaintiff wrote to the defendant, reminding it that the time provided in the contract for delivery of the merchandise had expired and asking for information whether the goods had been shipped from the mill. A day or two thereafter there was a telephone conversation between representatives of the two parties, as a result of which the plaintiff wrote to the defendant

on January 29th that they were ready to extend the letter of credit if the defendant had notified them, and adding: " We have today extended credit and request you to ship our order # 13." On the same day the bank wrote to the defendant that the letter of credit was extended to February 20th, 1920. On February 4th, 1920, the defendant wrote the plaintiff that they regarded the contract as canceled and " this matter has been closed and disposed of." In that letter they stated: " On January 8th, 1920, we received word from your bankers, the Bank of Taiwan, advising us that the letter of credit issued in our favor, had expired on December 31st, 1919, and requesting the return of the same for cancellation. * * * As this was equivalent to notice that you no longer desired the materials ordered, and in the absence of any other or different instructions from you, and by reason of this cancellation of credit, your order was cancelled. Not until the receipt of your letter of January 29th, 1920, and a letter of even date from the Bank, did we receive any indication from you that you desired to keep the order in force and to continue the letter of credit."

As the price of goods had advanced materially since the original order was given, the plaintiff brought this action to recover damages for the defendant's failure and refusal to ship the merchandise. At the trial there was no substantial dispute between the parties, except as to the market value of the goods in January, 1920. All the other material facts were proven by documentary evidence. At the close of the plaintiff's case and at the close of the whole case the defendant moved to dismiss the complaint substantially on the grounds that the failure of the plaintiff to extend the letter of credit, coupled with a notice sent by the bank on January 8th asking the return of the letter of credit for cancellation, constituted a breach of contract on the part of the plaintiff which justified the defendant in regarding the contract as abandoned and in refusing to proceed with it. The trial justice denied the

motion and directed the jury to bring in a verdict in favor of the plaintiff for such sum as they might find represented the damages suffered by defendant's failure to deliver the merchandise.  Upon appeal this judgment was reversed " upon questions of fact and of law " and the complaint dismissed.

The contract between the parties did not come into existence until the interchange of the letters on November 14th, in which the defendant accepted the plaintiff's order of October 30th subject to stated conditions, and the plaintiff accepted these conditions.  The order of October 30th called for delivery by the defendant of the merchandise within four to eight weeks and the establishment of a letter of credit by the plaintiff to insure payment when goods were shipped.  The letter of credit which was issued on November 13th, though it expired on December 31st, was sufficient to insure payment of any goods shipped in accordance with the order of October thirtieth within four to eight weeks of the date of the order.  By the interchange of letters on November 14th, terms of shipment other than those contained in the order were substituted in the actual contract of the parties, and the defendant was required to make shipments only " in about eight weeks from date (November 14th) sooner or later, subject to unavoidable delays," etc. The letter of credit delivered the previous day which expired on December 31st of course was insufficient to insure payment for shipments which under the terms of the contract the defendant had the right to make after December 31st.  The defendant might have insisted in the contract, upon the delivery of a new letter of credit to insure payment of any shipments that might be made, but instead it substituted for the provision of the order, " Terms:  1% · Cash  discount  establishing  Bankers irrevocable Letter of Credit " a new provision contained in the letter of November 14th: " Terms: 1% for cash

12

against our invoice and railroad B/L upon your letter of credit # 357 of November 13th." Under this provision of the contract " Letter of credit # 357 of November 13th " became the stipulated banking credit to insure to the plaintiff payments of any shipments it might make. The plaintiff had no obligation to furnish any other credit except as such obligation might arise under the subsequent provision of the contract that " in the event that it is impossible for us (the defendant) to make delivery within the life of the letter of credit, it is understood and agreed that you (the plaintiff) will make arrangements for extension of this credit through your bankers in New York."

Concededly the plaintiff did not extend the letter of credit on December 31st, when it expired, even though no shipments had at that time been made by the defendant, and the Appellate Division has held that at that time the plaintiff breached the contract and that this breach was so material that it justified the defendant in abandoning the contract without giving the plaintiff notice of rescission or opportunity to remedy any default. We do not so construe the rights of the parties under the contract. Ordinarily a provision for a letter of credit in a contract of sale is intended to provide complete assurance to the seller that he will be paid whenever he complies with his contract. In the present case, as pointed out above, the seller did not stipulate for a letter of credit which would provide such assurance, but was content to rely upon the plaintiff's promise that he would make arrangements for extension of the existing letter of credit in the event that it was " impossible " for the defendant to make delivery within its life. That clause must be given a reasonable construction. The plaintiff was called upon to make arrangements for the extension of the letter of credit only in the one event that it is " impossible " for the defendant to make deliveries. Unless in some manner the plaintiff received notice of circumstances

1924.]              Opinion, per LEHMAN, J.         [239 N. Y. 172]

which would render the delivery within the life of the contract impossible, he could not know until the close of banking hours on December 31st, that the shipment would not be made and the draft with bill of lading and invoices attached would not be presented at the bank. Until that time apparently only the defendant had actual knowledge of the fact that delivery would not or could not be made within the life of the letter of credit, and the defendant did not see fit to impart that knowledge to the plaintiff. Contractual obligations are fixed solely by the parties, and the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms. Here it is evident that the parties could not have expected that the plaintiff would extend the letter of credit until he had knowledge, actual or constructive, that the contingency had arisen which would give rise to an obligation on his part to make arrangements for its extension. It is urged, however, that when the letter of credit expired on December 31st, while the defendant still had time to make delivery under the contract, the plaintiff was bound to know that delivery was then impossible within the life of the letter of credit, and was under an obligation forthwith to extend the letter of credit, and his failure to do so on that day constituted a breach of the contract which itself justified the defendant in refusing to proceed with the contract. The language of the provision of the contract under consideration, the purpose to be accomplished by that provision, and the unreasonable inconvenience which would be caused to the plaintiff without corresponding benefit to the defendant by a requirement that the plaintiff was bound to extend the letter of credit immediately upon its expiration, though until then he had neither knowledge nor notice that delivery would not be made before that time, all point to the view that no such obligation rested upon him. The purpose of the

provision under consideration was to compel the plaintiff to furnish banking assurance that the defendant would be paid· for merchandise delivered upon presentation of the bill of lading, in the contingency that " it is impossible " to make delivery before December 31st. The existing letter of credit was without value to the defendant the instant that contingency arose, and it became evident that deliveries could not be made and payment claimed within the life of the letter of credit. From that instant and not merely at the expiration of the letter of credit, the defendant was without banking assurance that payment for goods delivered under the contract would be made upon presentation of· bill of lading, and the defendant was then entitled to demand that the plaintiff should arrange an extension of the letter of credit. The defendant would naturally know that the impossibility had arisen before December 31st, the plaintiff would ordinarily not know it before that date without notice from the defendant. The provision requiring the extension of the letter of credit was inserted for the protection of the defendant. The defendant desiring such protection would naturally be expected to transmit to the plaintiff notice that the stipulated occasion had arisen for the giving of such protection, and would ordinarily not leave the plaintiff to discover for himself that the occasion had arisen, after the lapse of days or weeks during which the defendant would have no banking credit of which it could ever avail itself. Obviously, under such circumstances, the plaintiff might reasonably assume that no occasion had arisen for the extension of the credit until he had received notice from the defendant that it was impossible to deliver the merchandise within the life of ·the letter of credit. The language of the provision that when the contingency arises the plaintiff would " *make arrangements* " for the extension of the letter of credit itself suggests that the extension ·would not follow immediately but that the

plaintiff would have reasonable time to make arrangements for such extension. Business men have a right to rely on the good faith and ordinary prudence of those with whom they deal. They may properly be held to every obligation which a business man acting in good faith and with prudence would understand he had assumed, but contracts made between business men in the usual course of business should not receive a technical construction which would require a business man to keep at his elbow a counselor learned in the law to advise in every contingency what his legal rights and obligations may be. Neither good faith nor ordinary prudence required the plaintiff to make any arrangements to extend the letter of credit at its expiration unless he had received prior notice that its extension would be required. The defendant was in no worse position in regard to the banking credit on January 1st than it was on December 31st or on the first day it became impossible to deliver goods within the life of the letter of credit. At neither time did it have any banking credit of which it could avail itself at the time the goods would actually be delivered. At both times it had only the promise of the plaintiff to make arrangements to extend the existing letter of credit to cover such delivery, and the defendant may not claim that it is justified in its refusal to deliver the goods until the plaintiff has failed to carry out his promise after such notice as would reasonably lead the plaintiff to believe that the time to carry out the promise had arrived, and under such circumstances that plaintiff's failure to carry out his promise, even though inadvertent, brought possible material injury to the defendant. The plaintiff was justified in believing that he would receive some notice from the defendant before he was called upon to make arrangements to extend his letter of credit, not only because the knowledge of when the time had come to make such arrangements rested peculiarly with the

defendant but also because on December 31st only the defendant knew whether it intended ever to deliver the goods, and if so whether it would deliver the goods within eight weeks of the date of the contract, or whether the same causes which rendered delivery before January 1st impossible would also serve to extend the time for delivery under the contract. Irrevocable letters of credit are not ordinarily, if ever, issued or extended to cover an indefinite period, and the plaintiff might well believe that he would not be expected to make arrangements to extend the credit in this case until he had some notice as to the time to which it should be extended.

The subsequent notice by the bank that the letter of credit had expired and should be returned for cancellation in no wise changed the defendant's rights or obligation. It was not given by the bank as the agent of the plaintiff, but was a notice, which a bank might send out as a mere matter of routine for its own protection, that the outstanding letter of credit had no longer any force in the defendant's hands. For these reasons the defendant has established no justification for its refusal to deliver the merchandise according to its contract.

The claim that the plaintiff is not the proper party plaintiff requires little consideration. While both parties undoubtedly understood that the plaintiff was the agent of a disclosed principal and that the contract was made for the benefit of the principal, yet the contract was made in the plaintiff's name, and all dealings of the defendant were with the plaintiff, and the plaintiff may, therefore, properly bring the action for breach of contract in his own name.

It follows that the judgment should be modified so as to grant a new trial, with costs to the appellant to abide event.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.